Filed 8/16/12 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2012 ND 165

Steven Falkenstein and

Connie Falkenstein, Plaintiffs and Appellants

v.

Jon W. Dill and Credico, Inc.,

d/b/a Credit Collections Bureau, Defendants and Appellees

No. 20120113

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable David E. Reich, Judge.

AFFIRMED.

Opinion of the Court by Kapsner, Justice.

John J. Gosbee, P.O. Box 474, Fort Yates, ND 58538-0474, for plaintiffs and appellants.

Christopher R. Morris, 33 South Sixth Street, Suite 3800, Minneapolis, MN 55402, for defendants and appellees.

Falkenstein v. Dill

No. 20120113

Kapsner, Justice.

[¶1] Steven and Connie Falkenstein appeal from a district court judgment dismissing their claims against Jon W. Dill and Credico, Inc. (collectively, the Collectors) for violations of the Fair Debt Collection Practices Act (“FDCPA”).  We affirm.

I

[¶2] The Falkensteins received medical services from Medcenter One but failed to pay the total balance due.  The debt was assigned to Credico, Inc. for collection.  Dill, an in-house attorney and employee of Credico, Inc., communicated with the Falkensteins regarding the debt.  In March 2009, judgment was entered in favor of Credico, Inc. for the amount of the Falkensteins’ debt, including interest.

[¶3] In September 2010, the Falkensteins filed suit against the Collectors, alleging the Collectors violated the FDCPA by attempting to collect pre-judgment interest on a medical debt and by overstating, to the Falkensteins’ real estate agent during a phone call, the amount of a judgment entered against the Falkensteins.  After discovery, the Collectors moved for summary judgment, claiming the Falkensteins’ assertion about the pre-judgment interest was an improper collateral attack on a prior judgment and arguing statements made during the phone call with the Falkensteins’ real estate agent did not violate the FDCPA because the Collectors were not communicating with a consumer.  The Falkensteins filed an answer, resisting the Collectors’ motion and requesting summary judgment in their favor.  In their answer, the Falkensteins also asserted the Collectors violated the FDCPA by communicating an incorrect judgment amount to Steven Falkenstein when he went to the Collectors’ office and made a payment toward the judgment; the Falkensteins did not amend their complaint to include this allegation.  The district court granted summary judgment for the Collectors, finding the claim regarding pre-judgment interest was barred by res judicata and determining statements made during the phone call with the real estate agent did not violate the FDCPA.  The court stated the Falkensteins’ claim regarding an incorrect judgment amount communicated to Steven Falkenstein was not properly before the court because the Falkensteins did not include the allegation in their complaint, nor did they amend their complaint to include the allegation.

II

[¶4] On appeal, the Falkensteins argue the district court should not have granted summary judgment for the Collectors because the complaint sufficiently raised the issue of the Collectors’ communication to Steven Falkenstein and because the Collectors violated the FDCPA by communicating an incorrect judgment amount to Steven Falkenstein and to the real estate agent.  The overarching issue is whether the district court erred in granting summary judgment for the Collectors.  The standard of review for an appeal from summary judgment is well established:

Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law.  A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record.  On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law.  Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.

Riverwood Commercial Park, LLC v. Standard Oil Co.
, 2011 ND 95, ¶ 6, 797 N.W.2d 770 (quoting 
Mo. Breaks, LLC v. Burns
, 2010 ND 221, ¶ 8, 791 N.W.2d 33).

A

[¶5] The Falkensteins assert the district court erred in not considering their claim that the Collectors violated the FDCPA by communicating an incorrect judgment amount to Steven Falkenstein.  The district court determined, “The Falkensteins failed to make this allegation in their complaint, and did not amend their complaint to add this allegation.  This alleged claim is not properly before the Court.”  The Falkensteins contend their complaint “fairly put at issue communications [to Steven Falkenstein] dealing with what was owed[.]”

[¶6] The Falkensteins’ complaint included a Background Facts section, explaining the Falkensteins’ debt to Medcenter One and the ultimate judgment for the Collectors.  In the Background Facts section, the Falkensteins also focused on interest charges added to the debt and on the phone call between their real estate agent and the Collectors.  The Falkensteins added “they were trying to sell [their] house voluntarily to avoid the consequences of losing a foreclosure judgment[,]” leading to their retention of a real estate agent.  Paragraph 12 of the complaint stated “[o]ne of the clouds on the title to [the Falkensteins’] home was the judgment” in favor of the Collectors.  Paragraph 12 further noted “a partial payment of $200 made on the judgment by Steven Falkenstein[,]” but the complaint did not allege the Collectors had provided Steven Falkenstein with an incorrect judgment amount when he made the $200 payment.  The remainder of paragraph 12 discussed a phone call made by the Falkensteins’ real estate agent.  The complaint asserted that when the real estate agent asked the Collectors for the payoff amount of the Falkensteins’ judgment, the Collectors provided an inaccurate figure.  The complaint then alleged the following FDCPA violations:

Under FDCPA, each of Dill and Credico violated FDCPA generally by engaging in a deceptive and abusive debt collection practice, namely trying to collect interest to which neither Medcenter nor Credico was entitled under contract and North Dakota law.  Further, each of Dill and Credico specifically violated FDCPA . . . by falsely representing the character, amount, or legal status of Consumer’s alleged debt, namely that he supposedly owed interest on that alleged debt.  Further, each of Dill and Credico violated FDCPA by using the judgment . . . as a club to try to collect on accounts for which it had no judgment.

[¶7] Under North Dakota’s notice pleading requirements, a complaint must contain “a short and plain statement of the claim showing that the pleader is entitled to relief[.]”  N.D.R.Civ.P. 8(a)(1).  “The purpose of this liberalized pleading requirement is to ‘place the defendant on notice as to the general nature of a plaintiff’s claim . . . . In determining the sufficiency of a pleading, we will look to the substance of the claim alleged.’”  
Tibert v. Minto Grain, LLC
, 2004 ND 133, ¶ 18, 682 N.W.2d 294 (quoting 
Daley v. Am. Family Mutual Ins. Co.
, 355 N.W.2d 812, 815 (N.D. 1984)).  The complaint in this case contained no allegation the Collectors violated the FDCPA by providing an incorrect judgment amount to Steven Falkenstein.  Instead, the substance of the complaint focused on the interest charged on the debt and an incorrect amount allegedly provided to the Falkensteins’ real estate agent.  The district court properly concluded the complaint did not claim the Collectors violated the FDCPA by communicating an incorrect judgment amount to Steven Falkenstein.

[¶8] The Falkensteins also argue the Collectors’ summary judgment motion raised the issue of communications with Steven Falkenstein, leading the Falkensteins to “defend[] against that argument by showing it was false.  Defending against an argument is not a new claim that requires amendment.”  The Collectors’ Memorandum in Support of Motion for Summary Judgment contained a section of “Material and Undisputed Facts[,]” which stated:  Steven Falkenstein made a $200 payment on February 17, 2010; the Collectors provided him with a written receipt indicating the $200 had been received; the Collectors supplied Steven Falkenstein with a “written breakdown of all debts then owed, with a mark next to the two accounts on which judgment was entered[;]” and Steven Falkenstein “also made a handwritten note of the remaining amount owed on the judgments—$1,202.63.”  The Collectors did not claim they provided the $1,202.63 amount to Steven Falkenstein as the correct amount remaining on the judgment after the $200 payment was made.  In Steven Falkenstein’s deposition testimony, he acknowledged making a $200 payment in February 2010, confirmed the Collectors provided him with a written statement of the debts owed, noted the Collectors placed marks next to the accounts on which judgment was entered, and conceded a handwritten amount of $1,202.13
(footnote: 1) looked like it may have been in his handwriting.  The issue of whether Steven Falkenstein was provided with an accurate judgment amount was not raised by the Collectors in their summary judgment motion, and the Falkensteins were not entitled to “defend[] against that argument by showing it was false.”

[¶9] Although the Falkensteins did not expressly move to amend their complaint to include the issue of communications to Steven Falkenstein, we also consider whether, by raising the issue in their answer to the Collector’s summary judgment motion, the Falkensteins implicitly moved to amend their complaint.  In 
Leet v. City of Minot
, the defendant raised an affirmative defense for the first time in its motion for summary judgment.  2006 ND 191, ¶ 8, 721 N.W.2d 398.  We noted, “The district court effectively granted a motion to amend by permitting the defense to be raised.  Other courts have allowed assertion of affirmative defenses for the first time in response to a motion for summary judgment where there is no prejudice or surprise to the nonmoving party.”  
Id.
  Deciding whether to grant a motion to amend a pleading lies within the sound discretion of the district court, and the decision will not be overturned on appeal unless the court “acts arbitrarily, unconscionably, or unreasonably, when its decision is not the product of a rational mental process leading to a reasoned determination, or when it misinterprets or misapplies the law.”  
Id.
 at ¶ 7.

[¶10] Here, the Falkensteins first raised their argument regarding the Collectors’ communication to Steven Falkenstein in their Answer Brief Opposing Collectors’ Motion for Summary Judgment, where they also asked the court to direct entry of summary judgment in their favor.  While we concluded the district court in 
Leet v. City of Minot
 did not abuse its discretion in effectively granting the defendant’s motion to amend a pleading, we noted the district court did so in the absence of prejudice to the opposing party.  
Leet
, 2006 ND 191, ¶¶ 9-10, 721 N.W.2d 398.  In this case, if the district court had granted the Falkensteins’ motion to amend, the Collectors would have been prejudiced because they were not able to explore the issue during discovery or address the claim in their own motion for summary judgment.  We conclude the district court did not abuse its discretion in declining to consider the issue of whether Steven Falkenstein was provided with an inaccurate judgment amount.

B

[¶11] The Falkensteins argue the court erred in determining the Collectors’ communication to the Falkensteins’ real estate agent did not give rise to an FDCPA claim.  The purpose of the FDCPA is “to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.”  15 U.S.C. § 1692(e).  Under the FDCPA, a debt collector may not falsely represent the character, amount, or legal status of any debt.  15 U.S.C. § 1692e(2)(A).  The objective “least-sophisticated-consumer standard” is the most widely used test for determining whether a debt collector’s communication violates 15 U.S.C. § 1692e.  
Weiss v. Collection Ctr., Inc.
, 2003 ND 128, ¶ 11, 667 N.W.2d 567.  A least-

sophisticated consumer is “one not having the astuteness of a ‘Philadelphia lawyer’ or even the sophistication of the average, everyday, common consumer[.]”  
Id.
  (quoting 
Russell v. Equifax A.R.S.
, 74 F.3d 30, 34 (2d Cir. 1996)).  “[T]he test is how the least sophisticated consumer . . . understands the notice he or she receives.”  
Id.
 (quoting 
Russell
, 74 F.3d at 34).

[¶12] Applying the least-sophisticated-consumer standard, we conclude the Collectors’ communication to the Falkensteins’ real estate agent did not violate the FDCPA.  In Steven Falkenstein’s deposition testimony, he acknowledged making a $200 payment to the Collectors in February 2010, adding, “I was trying to get—trying to get things solved so I could get this lien off my house, and—because it—I just don’t remember the price.  It was like $1,100.”  When asked if the Collectors stated “approximately [$]1,100” was due on the judgment, Steven Falkenstein answered, “It was right at $1,100 because I had . . . [the Collectors] look it up.”  Steven Falkenstein also testified the Collectors provided him with a receipt reflecting his $200 payment toward the judgment and with a written statement of all the debts owed by the Falkensteins to the Collectors.  At Steven Falkenstein’s deposition, the following exchange occurred regarding the written statement provided to him:

Q. So the first two items that have a little X mark and [are] underlined—

A. Right.

Q. —is that your underlining?

A. Nope.  That’s theirs.

Q. They—and they were trying to indicate to you the two accounts that they actually had the judgment lien on; is that true?

A. Yes.

Q. And then there’s a handwritten amount on the back.  Who wrote that?  I think that’s an abbreviation for judgment, $1,202.13.

A. That could have been me.  I don’t remember.

Q.   Does that look like it might be your writing?

A. Yes.  Yes.  I don’t remember.

Q. So is that possible that rather than, you know, actually $1,100, it was just a little bit more?  It was actually $1,202.13?

A. Could have been, yes.

Steven Falkenstein’s testimony demonstrates he believed the judgment balance was approximately $1,100 to $1,202.13.

[¶13] The Falkensteins were represented by counsel during the time in question, and their counsel suggested the real estate agent place the call at issue to the Collectors.  The Falkensteins provided the following explanation for the real estate agent’s phone call:

It was obvious to Consumers’ counsel that his clients didn’t know exactly what Collectors wanted to release the lien on the home.  Counsel couldn’t place the call himself because, if Collectors provided inaccurate information, he couldn’t testify. . . .  If the broker called, he would likely be [more] capable of absorbing the information than Consumers had been.  If the information provided by Collectors was accurate, fine.  Then it’s time to try to negotiate.  If, as it turned out, Collectors overstated the amount, there was a[n] FDCPA violation and the call between the broker and Collectors would be admissible.

[¶14] When the real estate agent made the phone call, the Collectors provided him with the total amount the Falkensteins owed to the Collectors—which included accounts on which judgment had not been entered—rather than the balance of the judgment.  At her deposition, Connie Falkenstein testified the Falkensteins were listening on speaker phone to the real estate agent’s phone call with the Collectors.  Connie Falkenstein stated “the judgment was only for $1,100 against the house.  It was not 2821 [the total debt amount allegedly communicated to the real estate agent]. . . . [T]he 2821 was not the lien against the house.”  Connie Falkenstein added that when the incorrect amount was provided to the real estate agent, “he says, ‘Well, excuse me,’ he says, ‘the judgment here shows 1,100-and-some.  How can it go from 11 hundred to 28?’”  The Falkensteins’ testimony demonstrates they were aware of the approximate amount of the judgment against them, and they recognized the dollar amount provided to their real estate agent was not the correct amount remaining on the judgment.  Because the Falkensteins, who are least-sophisticated consumers, understood the amount due on the judgment based on information previously provided by the Collectors and were not confused by the incorrect amount communicated to their real estate agent, the Collectors’ communication to the real estate agent did not violate the FDCPA, and the district court did not err in granting the Collectors’ motion for summary judgment.

III

[¶15] We conclude the Falkensteins’ complaint did not allege an FDCPA violation relating to an incorrect judgment amount communicated to Steven Falkenstein, and the Collectors did not violate the FDCPA by communicating an incorrect judgment amount to the Falkensteins’ real estate agent.  We affirm.

[¶16] Carol Ronning Kapsner

Mary Muehlen Maring

Daniel J. Crothers

Gerald W. VandeWalle, C.J.

Sandstrom, Justice, dissenting.

[¶17] Because the majority misinterprets and misapplies the “least-sophisticated-

consumer standard,” I respectfully dissent.

[¶18] Under the “least-sophisticated-consumer standard” the question is how the communication would be understood by the least sophisticated consumer.  
Weiss v. Collection Ctr., Inc.
, 2003 ND 128, ¶ 11, 667 N.W.2d 567.  In other words, might the least sophisticated consumer be confused or misled by the communication?  The majority notes, at ¶ 11, that the standard is an objective one, but then proceeds to apply it as a subjective standard.

[¶19] The majority, at ¶ 12, concludes that the real estate agent is not the least sophisticated consumer and would not have been misled.  But the standard is objective, not subjective.  Would the least sophisticated consumer have been misled?  The standard does not ask whether the particular agent or the particular consumer was misled.  The misapplication of the standard is further emphasized by the majority’s conclusion, “Steven Falkenstein’s testimony demonstrates he believed the judgment balance was approximately $1,100 to $1,202.13.”

[¶20] Under proper application of the objective standard, I would reverse the grant of summary judgment and remand for further proceedings.

[¶21] Dale V. Sandstrom

FOOTNOTES
1:    
The handwritten dollar amount is referred to as $1,202.13 in the majority of Steven Falkenstein’s deposition, but the amount is listed primarily as $1,202.63 throughout the record.